UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LAURIE R. BERQUIST,

          Plaintiff,

    v.

LORETTA E. LYNCH, in her official
capacity as Attorney General of the
United States,

          Defendant.

No.   2:14-CV-0295-SMJ

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Laurie Berquist's Motion for Summary Judgment, ECF No. 13. Plaintiff argues that (1) she was a qualified disabled person within the meaning of the Rehabilitation Act and American with Disabilities Act (ADA), (2) the Defendant[1] had a duty to reasonably accommodate her disability, (3) the Defendant failed to do so, and (4) the decision by the Defendant to terminate Plaintiff's employment was based upon conduct resulting from Plaintiff's disability. The Defendant argues that genuine questions of material facts remain. Specifically, Defendant (1) disputes whether Plaintiff was a qualified disabled person within the meaning of the ADA and Rehabilitation Act,

---

[1] The Court's use of "Defendant" should be understood as a reference to the United States Trustee Program, Plaintiff's employer, despite Attorney General Loretta Lynch being the named party in the suit.

ORDER - 1

(2) maintains that Defendant engaged in the requisite interactive process and reasonably accommodated Plaintiff as required, and (3) disputes whether Plaintiff reciprocated in good faith during the interactive process. Having reviewed the pleadings and the file in this matter, the Court is fully informed and denies the motion.

## I. <u>BACKGROUND</u>

**A.    Procedural History**

On September 9, 2014, Plaintiff filed a complaint alleging discrimination under the Rehabilitation Act, 29 U.S.C. § 791 *et seq*., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq*. ECF No. 1. Defendant answered on November 21, 2014. ECF No. 4.

On May 11, 2015, Plaintiff filed the present motion. ECF No. 13. With this motion, Plaintiff filed attendant declarations, ECF Nos. 15 & 16, and Statement of Material Facts, ECF No. 14. Defendant responded on June 8, 2015. ECF No. 21. With this Response, Defendant filed a Statement of Material Facts, ECF No. 22, and numerous declarations, ECF Nos. 23-31. Plaintiff replied on June 22, 2015. ECF No. 33. Discovery cutoff is currently scheduled for October 13, 2015. ECF No. 39.

//

/

**B.    Factual Background**

Defendant employed Plaintiff as a Legal Assistant from 1997 until 2013. ECF No. 13 at 3. In early 2010, Plaintiff began to exhibit symptoms of a then-undiagnosed health condition, which impacted major life activities and her ability to regularly attend her normal work schedule. ECF No. 21 at 3. Defendant allowed Plaintiff to take extensive amounts of accrued sick leave, accrued annual leave, advanced sick leave, and leave without pay. *Id.* at 4-5. Most of this leave was unscheduled, and Defendant had "little to no advanced notice . . . for the vast majority of the leave taken." *Id.* at 1.

In March 2012, Plaintiff was diagnosed with a thyroid disorder. ECF No. 13 at 3. She also began to experience additional symptoms possibly related to this disorder such as syncopal episodes, clinical depression, and sleep disorder. *Id.* These conditions continued to substantially limit many of Plaintiff's major life activities. *Id.*

Defendant issued a "Leave Restriction Memorandum" in July of 2012. ECF No. 16-1. Defendant issued this memorandum after Plaintiff took a total of 419 hours of leave in 2011. *Id.* at 1. The memorandum outlined the existing procedures for approval of paid medical and annual leave, and stated that Plaintiff would be held to these procedures. *Id.* at 2-3. Though she had been in the past, Plaintiff was no longer eligible for a compressed or flexible work schedule. *Id.* at

2. The memorandum did not bar Plaintiff from taking medical leave, but rather required her to later substantiate any unscheduled medical leave with doctors' certificates. *Id.* at 3.

In September 2012, Plaintiff requested and was granted medical leave through December 2012 under the Family Medical Leave Act (FMLA). ECF No. 13 at 4. On November 30, 2012, Plaintiff requested an extension of her leave of absence. ECF No. 26-17. Consistent with previous requests and the protocol of the Leave Restriction Memorandum, Defendant asked for an expected return to work date and documents detailing the nature and severity of Plaintiff's condition, the length of time it may last, and any anticipated treatments. ECF No. 26-17. It requested that this documentation be submitted by December 7, 2012 in order to consider this request fully before leave expired. *Id.*

In response to Defendant's request for documentation, Plaintiff's psychologist sent a letter to Defendant on December 12, 2012. ECF No. 26-8. In that letter, the psychologist stated that Plaintiff "is suffering from a number of medical conditions" as diagnosed by Plaintiff's endocrinologist, cardiologist, and internist. *Id.* The psychologist also stated that, in her opinion, Plaintiff "is not able to return to full working capacity at this time," but did not provide an expected return to work date or expected duration of the illness. *Id.* On January 1, 2013, Plaintiff informed Defendant that she expected to return to work on February 4,

2013. ECF No. 26-19. In a letter dated January 28, 2013, Plaintiff's internal medicine specialist provided information regarding Plaintiff's specific medical conditions and a return to work estimate of July 2013. ECF No. 15-2 at 19. On February 1, 2013, Defendant informed Plaintiff that the request for an extension of leave without pay was denied, and that she had been considered absent without leave (AWOL) as of December 20, 2012. ECF No. 26-20 at 2. On February 1, 2013, Plaintiff informed Defendant that she would not be returning to work on February 4, 2013, and that she would like to request unpaid leave through July 2013. *Id.* Around this time, Defendant began considering Plaintiff's removal from federal service. ECF No. 29 at 2.

On June 5, 2013, Defendant formally proposed Plaintiff's termination from employment. ECF No. 15-6. As primary reasons for dismissal, Defendant cited to Plaintiff's approximate 888 total hours of absence and the serious loss of confidence in Plaintiff's ability to report to work on July 1, 2013 or thereafter. ECF No. 15-6 at 1-4. This proposal was passed onto a supervisor from a different region in the United State Trustee Program (the "designated deciding official") for a final decision. *Id.* at 5.

On July 1, 2013, Plaintiff returned to work full-time. ECF No. 26 at 14. After returning to work full-time, Plaintiff again did not comply with the requirements set out in the July 2010 Leave Restriction Memorandum at least

ORDER - 5

twice. ECF No. 26-23. On September 24, 2013, the June 5 removal proposal was adopted by the designated deciding official and Plaintiff's employment was terminated. ECF No. 15-8.

## II.    <u>DISCUSSION</u>

In moving for summary judgment, Plaintiff bears the burden to prove "'beyond controversy'" all essential elements of her claim. *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quoting William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 14:124-27 (2001)). Admission of evidence before the Court for purposes of summary judgment "must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Therefore, in order to rule on summary judgment, the Court first needs to resolve all evidentiary objections.

### A.    **Evidentiary Objections**

Defendant has objected to Plaintiff's Exhibits B, C, E, J, K, L, N, O, P, Q, R, S, and T as inadmissible hearsay. ECF No. 21 at 13. Additionally, Defendant objects to Exhibits B, C, J, K, L, N, O, P, Q, R, S, and T as having defective authentication. *Id.* at 13-14. For both objections, Defendant relies on *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002). Plaintiff responds by stating that *Orr* has been superseded by a recent change in the Federal Rules of Civil Procedure,

and that "Rule 56 no longer requires that evidence presented within a summary judgment motion be authenticated at that time." ECF No. 33 at 4. Plaintiff goes on to defend the offered material as easily authenticated through testimony, and either excluded from the definition of hearsay under the Federal Rules of Evidence 801(d) or admissible hearsay under Rules 803(3), 803(4), and 803(6). *Id.* at 5.

An item of evidence may be authenticated by extrinsic evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Defendant provided Plaintiff with Exhibits J, K, L, N, O, P, Q, R, S, and T as part of discovery and Plaintiff's counsel has established his personal knowledge and his ability to testify to this fact. ECF No. 16 at 1-2. It is well established that documents produced in discovery by a party-opponent are considered authentic for purposes of admissibility. *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir. 1996). Accordingly, Defendant cannot claim these exhibits to be inauthentic.

This leaves the question of whether Plaintiff's declaration sufficiently authenticates Exhibits B and C. Although authentication is a requirement before admission, "an inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility." *Orr*, 285 F.3d at 776. Additionally, Rule 904(b)(4) allows authentication of documents "by review of their contents if they

appear to be sufficiently genuine." *Id*. at 778 n. 24. Exhibit B contains the bulk of medical records regarding Ms. Berquist's health problems at issue. ECF No. 15-2. Exhibit C is Ms. Berquist's FMLA application. ECF No. 15-3. Even a cursory review of the contents of these two documents under Rule 904(b)(4) is sufficient to establish "that a reasonable juror could find in favor of authenticity or identification." *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) (quoting 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 901(a) [01], at 901–16 to –17 (1983)). *See also Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533-34 (9th Cir. 2011) (holding in error a district court finding that documents were not authentic when a review of their contents would have proven them sufficiently genuine).

Here, all documents bear either a letterhead or signature of an individual who Plaintiff's counsel represents is available to testify to the authenticity of those documents. Nothing in the documents suggest that they are not what they purport to be. As before, all pages appear to have been provided to Plaintiff by Defendant in the course of discovery (as evidenced by those pages bearing Bates stamps from Defendant's counsel). Defendant has relied on several of these documents in its reply brief and has sufficiently authenticated those documents for that purpose. *See, e.g.*, ECF No. 26-13 (Defendant's Exhibit N, a duplicate of Plaintiff's Exhibit B). *Orr,* 285 F.3d at 776 ("when a document has been authenticated by a party,

the requirement of authenticity is satisfied as to that document"). Because there is no evidence disputing the authenticity of these documents, the Court finds the entirety of Plaintiff's Exhibits B and C to also be sufficiently authentic.

All contested exhibits are also admissible. All are either excluded from the definition of hearsay or are hearsay that is excepted from Rule 802. Exhibits E, J, K, L, N, O, P, Q, R, S, and T represent statements made by Defendant and are excluded from the definition of hearsay. Fed. R. Evid. 801(d)(2). Exhibits B and C are comprised of statements reasonably pertinent to medical diagnoses. Fed. R. Evid. 803(4).

**B.    Rehabilitation Act claim**

In order to make a prima facie case under the Rehabilitation Act, Plaintiff must show that (1) she suffers from a disability within the meaning of the Act, (2) she is a qualified individual inasmuch as she is able to perform the essential functions of her job with or without reasonable accommodation, and (3) she suffered an adverse employment action solely because of her disability. *Walton v. United States Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007).

1.    <u>Disability</u>

The Rehabilitation Act incorporates the ADA's definition of disability and elements of substantive liability. *Id.* The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of

such individual." 42 U.S.C. § 12102(1)(A). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Those impairments that are episodic or presently inactive are still considered a disability "if [they] would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Plaintiff asserts that she experienced "significant health problems" as early as 2010 that substantially limited one or more major life activities. ECF No. 13 at 3. Defendant asserts that Plaintiff is not disabled because she was able to do things that seemed inconsistent with her stated limitations caused by her disability. ECF No. 21 at 14-15. Despite Defendant's assertion, it is clear from the record there is no genuine dispute that Plaintiff suffered from some form of disability.

An individual suffers a disability when a physical or mental impairment substantially limits one or more major life activities. Neither party gets to choose when a disability begins. *See Bragdon v. Abbott*, 524 U.S. 624, 641 (1998) ("[T]he disability definition does not turn on personal choice. When significant limitations result from the impairment, the definition is met."). In early 2010, Plaintiff's impairment began substantially limiting one or more major life activities to the point of requiring an "increasing amount of sick leave," ECF No.

26 at 2, and resulting in "extreme anxiety and other mental health issues." ECF No. 13 at 3. This impairment continued without interruption from 2010 onward, as Plaintiff's medical providers regularly referred to the myriad of medical conditions collectively as "psychological and physical conditions." ECF No. 15-2 at 3. Nothing in the record supports a different conclusion. Accordingly, the Court finds Plaintiff to have become disabled as early as 2010.

    2.   <u>Qualified</u>

To be a qualified individual under the Rehabilitation Act, the disabled individual must have "requisite skill, experience, education and other job related requirements." 29 C.F.R. §1630.2(m); *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). Second, the disabled individual must be able to perform the "essential functions" of the position, with or without reasonable accommodation. 42 U.S.C. §12111(8); *see Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001). Because there is no dispute that Plaintiff held the requisite skills to perform the job after 16 years of successfully doing so, the Court will focus on whether she could perform the essential job functions. ECF No. 21 at 3; ECF No. 13 at 10.

"Essential functions [are] the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n). They are the requirements of the position that a disabled individual must be able

to perform "in spite of [her] handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979). Both parties have an independent burden to carry as to this inquiry. A defendant "'must put forth evidence establishing those functions.'" *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (quoting *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007)). "A plaintiff bears the burden of demonstrating that she can perform the essential functions of her job *with or without* reasonable accommodation." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (emphasis added).

To establish that she is qualified, Plaintiff asserts that she could perform the essential job functions both before and after her extended medical leave. ECF No. 33 at 7-8. Defendant argues Plaintiff was "unable to attend work regularly," which it holds to be an essential job function, and therefore Plaintiff was not a qualified person under the Rehabilitation Act. ECF No. 21 at 14-15. Both parties have failed to meet their respective burdens. The record is incomplete as to what the essential job functions are for Plaintiff's position, which has precluded Plaintiff from establishing that she is able to perform those functions.

"[R]egular and predictable attendance is not per se an essential function of all jobs." *Humphrey*, 239 F.3d at 1135 n. 11. To hold otherwise would remove the burden of proving that a proposed accommodation is either unreasonable or that it would pose an undue hardship upon the employer. *Id*. This would also undermine

the very fact specific nature of disability claims, which demand an "individualized inquiry . . . [which is] essential if [the Rehabilitation Act] is to achieve its goal of protecting handicapped individuals from deprivations based on prejudice." *School Bd. Of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 (1987). To focus solely on those brief periods of time when an individual is on leave because of her disability is a misapplication of the law's requirements and will inevitably result in disqualification under the ADA and Rehabilitation Act for failure to perform essential job functions. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d at 1246-47 (9th Cir. 1999). This is acutely true for those similarly situated as Plaintiff, suffering from a disability that is persistent, inconsistent, episodic, and severe.

While it is clear that some level of attendance is required for any position at the United States Trustee Program, it is unclear what that level is. Besides attendance, it is also unclear what other job functions were essential for Plaintiff. ECF No. 15-7 at 1 ("[N]o one realized how many interruptions [Plaintiff] had and how much [Plaintiff] actually did in the office that was not included in [Plaintiff's] job description."). In light of the above, and after drawing all reasonable inferences in favor of the Defendant, the Court is unwilling to determine what the essential job functions of Plaintiff's position actually were without evidence speaking directly to that point, such as a written job description, employee statements, a vacancy announcement, or an equivalent. The

underdeveloped nature of the record demands caution. Accordingly, the Court finds that both parties have not yet met their burdens and that summary judgment is inappropriate at this stage.

### 3.   Adverse Employment Action Based Solely on Disability

In relevant part, the Rehabilitation Act reads:

> No otherwise qualified handicapped individual in the United States, as defined in section 705(20) of this title, shall, *solely* by reason of his handicap, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . .

29 U.S.C.A. § 794 (emphasis added).[2] An adverse employment action such as termination can be a form of discrimination under the ADA and Rehabilitation Act. *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) ("A failure to provide reasonable accommodation can constitute discrimination under section 504 of the Rehabilitation Act."); *Humphrey*, 239 F.3d at 1139 ("For the consequence of the failure to accommodate is . . . frequently an unlawful termination."). This has been read to mean that "a public entity can be liable for damages under [the Rehabilitation Act] if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).

---

[2] While the two statutes are treated as identical in their definitions and elements, the ADA and the Rehabilitation Act part company regarding what arises to discrimination. *Head*, 413 F.3d at 1064 (agreeing with the Eleventh Circuit that the less restrictive "motivating factor" standard is appropriate for ADA claims); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068 (11th Cir. 1996) (declining to import the term "solely" into the standard of discrimination for claims under the ADA).

ORDER - 14

Engaging in the interactive process is a "mandatory rather than permissive obligation on the part of employers" precisely because discrimination can be accomplished through indifference to a disability. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated on other grounds sub nom.*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

Plaintiff argues (1) that Defendant failed in the obligation to engage in an interactive process in good faith, ECF No. 13 at 14-15, (2) that Defendant chose not provide a reasonable accommodation for an extension of unpaid leave in order to gain a pretext to terminate Plaintiff, *id.* at 18-20, and (3) that Plaintiff's termination was the result of discrimination on the basis of her disability. *Id.* at 20.

Defendant asserts that it engaged in an interactive process in good faith for some time and argues that it was Plaintiff who ultimately did not act in good faith. ECF No. 21 at 15-16. Also, Defendant argues that the requested accommodation was unreasonable in light of the amount of time Defendant had been engaged in the interactive process. *Id.* at 18. Finally, Defendant believes that Plaintiff's termination was properly founded on conduct unrelated to her disability. Id. at 17.

a.    *The Interactive Process*

To achieve the goals of the Rehabilitation Act and the ADA, there is a process of "communication and good-faith exploration of possible accommodations between employers and individual employees" commonly called

the interactive process. *Humphrey*, 239 F.3d at 1137 (citing *Barnett*, 228 F.3d 1105 at 1114-15). The "mandatory obligation under the ADA to engage in an interactive process" arises "[o]nce an employer becomes aware of the need for accommodation." *Humphrey*, 239 F.3d at 1137. The actual process need not be a formal one. 29 C.F.R. Pt. 1630, App. § 1630.9

Typically, a breakdown in the process is the result of a party to the process not engaging in good faith. *See Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1172 (citing *Beck v. University of Wisconsin Bd. of Regents*, 75 F. 3d 1130, 1135 (7th Cir. 1996) (instructing courts to isolate the cause of a breakdown and assign responsibility by identifying the bad faith engagement of one of the parties)). Should an employer obstruct this process "injunctive relief is an available remedy to insure compliance with the requirement of good faith interaction and to require reasonable accommodation." *Barnett*, 228 F.3d at 1116 n.7. Other than for obstruction, liability will arise if the employer failed to engage in the interactive process and "a reasonable accommodation would have been possible." *Humphrey*, 239 F.3d at 1138. However, engaging in the interactive process does not require that any requested accommodation must be adopted by the employer, as "[an] 'employer is not obligated to provide an employee the accommodation [she] requests or prefers, the employer need only provide some reasonable accommodation." *Zikovic v. Southern California Edison Co.*, 302 F.3d 1080, 1089

(9th Cir. 2002) (quoting *E.E.O.C. v. Yellow Freight Sys. Inc.*, 253 F.3d 943, 951 (7th Cir. 2001)).

According to the Plaintiff, refusing to provide the requested accommodation without offering an alternative demonstrates that Defendant failed in the duty to engage in an interactive process. ECF No. 13 at 17. Plaintiff states that the accommodation of extending more unpaid leave was reasonable "because the accommodation proposed by Plaintiff was, in fact, entirely successful," and enabled her to recover from her condition and return to work. *Id.* at 18. Plaintiff provides statements from internal email correspondence at Defendant that exhibit a certain disregard for Plaintiff's condition and situation, which Plaintiff claims to evince a bad-faith participation in what Defendant termed as the "employee's game." *Id.* at 6.

In response, Defendant claims that it had engaged in the interactive process in good faith throughout Plaintiff's employment. ECF No. 21 at 16. In addition to providing evidence of Plaintiff's discredited statements regarding the reasons for some of her medical leave, Defendant also provides the medical documents that Plaintiff provided to substantiate her initial FMLA and extensions thereof. ECF No. 33 at 5-13. Defendant believes these documents are vague and incomplete and any breakdown in the interactive process starts with Plaintiff's reluctance to engage in good faith.

From the record before the Court, it is clear that there was a breakdown somewhere in this interactive process. That said, it is not clear whether the breakdown was caused by the bad-faith or obstructive behavior of the Plaintiff or the Defendant. Reasonable minds could differ as to whether Defendant had made a number of efforts in good faith to reasonably accommodate Plaintiff's disability over the course of the preceding years by allowing varying work schedules, approving advanced leave, and granting unpaid leave. It is also possible to infer from the record that during the period of time when Plaintiff was AWOL, she engaged in the interactive process on a limited basis and left Defendant with few informed choices. Because of this, summary judgment is not appropriate.

b.    <u>*Reasonable Accommodation and Undue Hardship*</u>

Reasonable accommodation is defined as "modification or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.C. § 1630(o)(1)(ii). Each case "requires [employers to conduct] a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow [the disabled individual] to meet the program's standards." *Wong v. Regents of University of California*, 192 F.3d 807 (9th Cir. 1999). Any accommodation must be effective. *U.S. Airways*, 535 U.S. at 400.

Determining what could be a reasonable accommodation is a "'continuing' duty that is 'not exhausted by one effort.'" *McAlindin v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999) (quoting *Cirado v. IBM Corp.*, 145 F.3d 437 (1st Cir. 1998)). Finally, whether a particular requested accommodation is reasonable is a question of fact, and "a court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation." *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996) (citing *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994)); *Nunes*, 164 F.3d at 1247 (citing *Barnett v. U.S. Air, Inc.,* 157 F.3d 744, 752 (9th Cir.1998)).

On this issue, Plaintiff argues that "[e]xtended unpaid leave is a well-established acceptable form of reasonable accommodation," and that just such an accommodation was possible and should have been provided to Plaintiff. ECF No. 13 at 17-18. Indeed for some employees, unpaid medical leave can be the only available accommodation of their disability. *See Nunes*, 164 F.3d at 1247. Furthermore, "an *extension* of an existing leave period . . . may be a reasonable accommodation if it does not pose an undue hardship on the employer." *Id.* (emphasis added).

For its part, Defendant argues that extending unpaid leave placed an undue hardship on the office. ECF No. 21 at 17. It is well settled that "[a] demand for an effective accommodation could prove unreasonable because of its impact, not on business operations, but on fellow employees. . ." *U.S. Airways, Inc.*, 535 U.S. at 400. This is what Defendant alleged in its September 24, 2013 letter terminating Plaintiff's employment. In part, it states:

> Your lengthy absence from the Spokane Office created a significant hardship not only on that office, but also on other regional staff. . . . Also, as a result of your absence, . . . the set-up of [creditor meetings], the transfer of the recordings of [those meetings], the answering of telephones, and the handling of mail and other reception duties, were divided among other staff on a daily basis.
>
> . . . Since other staff members had many other functions to fill, your absence contributed to an increase in the overall stress level and a reduction in productivity in the Spokane District Office.

ECF No. 15-8 at 2-3.

Based on this evidence, the incomplete record, and the fact intensive nature of this inquiry, a material question still remains as to whether the requested accommodation—an extension of leave without pay—was reasonable.

### c. *Discrimination on basis of disability*

In light of the disputes of material facts in this present order, the Court will refrain from examining this particular issue closely. Furthermore, the Court should be "generally reluctant to [order] summary judgment in a case in which the

motivation of a party is placed in issue." *Haydon v. Rand Corp.*, 605 F.2d 453, 455 n.2 (9th Cir. 1979). Accordingly, this issue is reserved for a more advanced stage of the litigation.

## III.    CONCLUSION

When all the facts are viewed in the light most favorable to the Defendant, the Court finds that there exist genuine disputes of material facts which preclude summary judgment in favor of the Plaintiff at this time.

Accordingly, **IT IS HEREBY ORDERED**: Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 14th day of August 2015.

_____
SALVADOR MENDOZA, JR.
United States District Judge

Q:\SMJ\Civil\2014\Berquist v. Holder-0295\ord.deny.msj.lc2.docx

ORDER **-** 21